UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT HYNES,

      Plaintiff,

v.                                      Case No. 8:05-cv-2001-T-TBM

MICHAEL J. ASTRUE[1],
Commissioner of the United States
Social Security Administration,

      Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was 42 years of age at the time of his administrative hearing on remand, which was conducted on March 6, 2003. Plaintiff has a sixth grade education in special education classes and claims difficulty in reading and writing. He last worked in 1987 or 1988 as a truck driver. Pertinent to this appeal, Plaintiff applied for Social Security disability

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

benefits and Supplemental Security Income payments in August 1997.[2] The applications were denied initially and upon reconsideration, and by decision of an ALJ on August 3, 1999. By that decision, Plaintiff was determined capable of performing a modified range of light work. See (R. 39-51). On subsequent applications filed in September 1999, an Administrative Law Judge found in favor of the Plaintiff on his claim for Supplemental Security Income payments ("SSI"), with disability as of August 4, 1999. See (R. 64-71). On an appeal of the August 3, 1999, decision, the Appeals Council granted the request for review and remanded the decision to the ALJ for further consideration. At the same time, it vacated the favorable decision of February 2, 2001, and consolidated all the outstanding claims. (R. 84-88). The hearing on remand was conducted on March 6, 2003.

The Plaintiff was represented by counsel at the hearing and testified on his own behalf. As the transcript reveals, Plaintiff is a poor historian. As Plaintiff recalls, he last worked in 1987 or 1988 as a truck driver. He stopped working when he lost his license because of a DUI. It appears from his testimony that he claims he can no longer work because of problems in his back and neck that effect his ability to lift and because he cannot read or write. He also claims to be blind in one eye. When questioned by the Administrative Law Judge ("ALJ") concerning his alleged 1992 onset date, Plaintiff was unable to recall the significance of that date. Indeed, he was unable to recollect or discuss with any real clarity specific treatments or conditions until more recent times. He vaguely recalls problems with his neck and back that essentially were treated with medication. He recalls having surgery for

---

[2]Plaintiff also appears to have had prior applications in 1989 and 1992.

carpal tunnel syndrome in about 1998. The surgery helped with his hand but did little to ease the pain in his elbow, which he attributes to a pinched nerve. When questioned about a number of medical injuries, Plaintiff has, at best, a vague recollection. He recalls that he was "fired" by a number of his doctors. He attributes this to his frustration and lack of tolerance. Regarding his back pain, he claims that surgery has been recommended but he does not want to undergo surgery until it is absolutely necessary. He has seen a psychiatrist for depression and anxiety but indicated that the medication he received made his mood swings even worse. He has been treated on occasion at Shand's hospital in Gainesville where he saw a neurologist and was said to have GERD. Plaintiff has had hepatitis C for years, and it leaves him without energy and where he does not feel like doing anything. Plaintiff indicates he has had problems sleeping at night for twelve to thirteen years. He claims the pain wakes him up and he gets only four to five hours of sleep each night. As a result he naps for one to two hours every day.

From 1992 to 2000 when his wife left him, Plaintiff claims to have spent most of the day watching television and caring for their handicapped son. He would make snacks and lunch, but generally he just laid on the couch and napped. During this period, he estimated he could sit for twenty to thirty minutes, stand for a similar period, and then would need to move about. He could only walk twenty-five to a hundred yards because of pain in his lower back. Plaintiff claims he could only lift and carry seven to twelve pounds and his back hurts when he bends over and touches his toes. After his family moved out, he moved in with a friend. He lives out in the woods and generally stays to himself. On questioning about records reflecting drug or alcohol abuse, Plaintiff indicated he quit drinking in 1997 or 1998. He used

to like to fish but not anymore, and generally the only person he socializes with is his landlord. He receives food stamps and has been on Medicaid since 1990.

In response to his attorney's questions, Plaintiff indicated he has a depressed mood and his neck hurts like someone is sticking a needle in it. The pain is aggravated when he turns his head fast. At times, the pain goes into his shoulders and sometimes down his right arm, which gets numb. He claims this happens six days a week. Regarding his low back pain, he describes the pain as at a level seven out of ten, with ten being the highest level of pain. The pain is aggravated when he walks or stays in one position for too long. He has a skin condition that causes his skin to blister. He has been prescribed cream for the condition, but it does not help much. Even if he could alternate between sitting and standing and was able to move about, Plaintiff believes he would be unable to get through an entire workday because he would need to lie down. He does not believe he had problems with supervision in the past, although he acknowledges he has had difficulty with a number of his doctors. See Plaintiff's testimony (R. 587-631, 635-36, 640).

The ALJ next took testimony from Mark Leaptrot, a vocational expert ("VE"). The VE initially classified Plaintiff's former work as a truck driver as light exertional work under the Dictionary of Occupational Titles ("DOT"). According to the VE, such work normally is classified as medium, unskilled work, but as performed by Plaintiff it was light exertional work. The VE also indicated that the job listed as "electrician's helper" by the Plaintiff was better classified as construction worker II by the DOT, which describes it as a clean up job, heavy exertional level and unskilled. However as described by Plaintiff, he performed it at the light exertional level.

The VE was asked to assume a person of 42 years of age, approaching 50 years of age, with a marginal education and the ability to lift twenty pounds occasionally and ten pounds frequently, the ability to stand and walk six hours in an eight-hour workday and sit two hours in the same workday, with the ability to occasionally bend, stoop, crouch, crawl, and kneel, but cannot climb and work at unprotected heights or around dangerous machinery, with further limitations for no work requiring excellent bilateral visual acuity or production quotas, and requiring work with simple rote one and two-step operational tasks, with no contact with the general public, and only occasional contact with co-workers and supervisors. On this hypothetical, the VE opined that Plaintiff could do the work of construction worker II as he used to perform it. If the hypothetical was modified such that the person could *sit*, stand, and walk six hours in an eight-hour day, the VE opined that such person also could do Plaintiff's last work as a truck driver as he performed it. On questioning by Plaintiff's counsel regarding the requirement for visual acuity in connection with the truck driving work, the VE opined that such person would need 20/20 vision with the best corrective lenses. Additionally, if it was assumed that such person would periodically and unpredictably be verbally abusive towards others in the work place or in the general public, the VE opined that this would affect his ability to keep and maintain employment in either position. See VE's testimony (R. 631-642).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of December 22, 2003, the ALJ determined that while Plaintiff has severe impairments related to a history of alcohol and drug abuse, history of atypical chest pain, history of neck and back pain secondary to mild degenerative disc disease at C3-6, decreased visual acuity of the right eye, history of pophhria cutanea tarda, history of left kidney stone resolved, history of dysthymic disorder, history of hepatitis C, history of right carpal tunnel release, and history of right ulnar release, he nonetheless had the residual functional capacity to perform light exertional work with limitations consistent with those set forth in the first hypothetical.[3] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past work as a truck driver and in construction site clean-up. Upon this conclusion, the Plaintiff was determined to be not disabled. (R.16-22). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits or Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that

---

[3] By reason of the prior adjudications, the ALJ initially concluded that despite an alleged onset date in August 1992, the issue of disability through March 23, 1994, could not be reconsidered. Also significant to the decision was Plaintiff's date last insured for disability insurance benefits, March 31, 1995.

"results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises a single broad claim.  By this claim, Plaintiff argues that the ALJ erred by finding him capable of performing his past relevant work given his low IQ and plethora of mental and physical impairments and failing to consider the impairments in combination.  Plaintiff maintains that substantial evidence establishes that he has an IQ of 62; a seventh grade education; a mood disorder due to chronic pain, with depressive features; a bad temper, diagnosed as explosive disorder; a blind right eye; hepatitis C; and past relevant work as a truck driver that included bending one-third and climbing one-third of the time, along with lifting fifty pounds occasionally and frequently.  By his account, his actual mental and physical residual functional capacity precludes the performance of his past work and other jobs.  Plaintiff maintains that the ALJ failed to consider his various impairments in combination and make specific findings as to the effect of such.  Plaintiff seeks a remand for further assessment of his mental and physical capacities to perform full-time, competitive work.

The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

After careful review of the decision and the entirety of the medical record, I conclude that insofar as the ALJ concluded that Plaintiff had the residual functional capacity to perform his past work as a construction helper, the decision is supported by substantial evidence and comports with the applicable standards.

Initially, to the extent that Plaintiff complains the ALJ erred by not considering his impairments in combination, I am obliged to find otherwise. As the decision reflects, the ALJ expressly noted that "[a] medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. The Regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." (R. 18) (citations omitted). In his findings, the ALJ reiterated that "[t]he claimant has an impairment or a combination of impairments considered 'severe' . . . ." (R. 21). In this Circuit, statements such as these adequately reflect the ALJ's consideration of the combined

effect of a claimant's impairments. See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002); Jones v. Dep't of H.H.S., 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Wheeler v. Heckler, 784 F.2d 1073 (11th Cir. 1986)).

There are further indications that the ALJ was aware of his duty to consider all Plaintiff's complaints. Thus, in reference to determining the Plaintiff's residual functional capacity ("RFC"), the ALJ acknowledged his duty to consider "the effects of physical and/or mental limitations that affect the ability to perform work-related tasks," and that, in "making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (R. 18). Furthermore, the ALJ's RFC finding itself demonstrates that he credited Plaintiff with a number of impairments and that he considered the combined effect of these physical and mental impairments in reaching his assessment. The combination of impairments was presented to the VE for his consideration as well. In these circumstances, I find that the ALJ did consider Plaintiff's impairments in combination.

Plaintiff specifically cites to evidence of his seventh grade education; an IQ of 62; a diagnosis of mood disorder due to chronic pain, with depressive features; his bad temper and a diagnosis of explosive disorder; a blind right eye; and hepatitis C in support of his argument that all prevent him from performing his past work on a full-time basis.[4] (Doc. 23 at 11). Again, I find that a fair reading of the decision reflects the ALJ's consideration of the medical

---

[4]Here, Plaintiff also cites to an administrative filing concerning the job requirements of his past work as a truck driver. This need not be discussed in detail as I conclude that the ALJ should be affirmed only to the extent that he concluded Plaintiff could perform his past work cleaning up construction sites.

and mental health record as to these conditions and others, the ALJ's conclusions about the same, and the import of Plaintiff's limitations on the RFC determination. While the Plaintiff may disagree with the ALJ's decision not to credit some of the medical or mental health findings in this record, he does not demonstrate his claim that they were not fairly considered or that the ALJ's conclusions about them are unsupported such that a remand is necessary for further consideration. Thus, by my review, while Plaintiff is correct that Robert David, Ph.D., stated in 1999 letter that Plaintiff's complaints were consistent with a diagnosis of mood disorder due to chronic pain, with depressive features (R. 271) and in a 2000 letter that the Plaintiff had a full scale score of 62 on the WAIS-III intelligence test reflecting functioning in the mentally retarded range, Plaintiff overlooks that the ALJ considered the mental health reports and records and ultimately rejected these findings, either expressly or impliedly, as controlling on the degree of mental impairment Plaintiff actually suffered. Similarly, while there are references to a bad temper in the record and one doctor wrote "explosive disorder" on a form, the matter of Plaintiff's temper was addressed by the ALJ and again discounted to the extent that such prevented Plaintiff from work. It is important to note that mere diagnosis alone is not enough to establish disability. Rather, it is the functional limitations from the impairments which governs that determination. Here, Plaintiff simply fails to demonstrate that the ALJ's conclusions about his mental functional capacity were not fairly considered and assessed.

In particular, the decision reflects that the ALJ rejected the validity of the IQ score for several reasons and concluded Plaintiff suffered from a dysthymic disorder rather than a mood disorder. In doing so, the ALJ relied, in particular, on different findings of Dr. Umesh

Mhatre, a treating psychiatrist, and the report of a psychological consult by Candace Valenstein, Ph.D.  The ALJ also cited to reports suggesting that Plaintiff's poor attitude, lack of motivation, lack of credibility, and long-term quest for disability benefits cast doubt on his veracity and the validity of his test results.  By the ALJ's assessment, Plaintiff's mental health imposed only mild difficulties in his daily functioning and moderate limitations in his social functioning and concentration, persistence and pace.  The decision also reflects recognition of Plaintiff's bad temper.  But, as the ALJ noted, in addition to finding that Plaintiff suffered from dysthymic disorder, Dr. Mhatre also noted poor impulse control by the Plaintiff but improvement with medication and anger control classes.  As for his "explosive disorder," it is worthy of note that Dr. Rajani Ravindra, M.D., also declined to give a mental capacity assessment of the Plaintiff because he had only seen him in one office visit. (R. 356). Plaintiff himself testified that while he has had problems getting along with a number of his doctors, he has not had problems with the people he worked with or with his supervisors.  As for Plaintiff's hepatitis C and lack of visual acuity, he was credited with both, but not to the extent that these conditions alone or in combination left him disabled from all work.[5]

---

[5]As for Plaintiff's hepatitis C, he testified that he had had it for years, and lately he did not have a lot of energy.  While the ALJ's credibility discussion was rather summary, the decision reflects that the ALJ recognized his duty to consider Plaintiff's symptoms in accordance with the Regulations at 20 C.F.R. §§ 404.1529 and 416.927.  By the ALJ's assessment, while Plaintiff suffered a number of impairments, he was not credible in his claim of total disability as revealed by his inconsistent reporting, his motivation to be found disabled, his lack of motivation regarding his care and trying to find other work, a number of references in the medical reports calling his veracity and motivations into question, and the medical record.  Proper application of these regulations will satisfy this circuit's "pain standard," and Plaintiff does not raise any issue concerning the ALJ's credibility findings or demonstrate any error therein on this appeal.

It is worth repeating that mere diagnosis alone is not enough to establish disability. It is the functional limitations from the impairments which governs that determination, and here Plaintiff fails to demonstrate that his limitations in connection with the cited impairments were worse than as assessed by the ALJ. Significant to my decision is the fact that the ALJ credited Plaintiff with functional limitations in connection with his marginal education and intelligence, his temper, his anti-social ways, and his lack of bilateral visual acuity in both his RFC assessment and in his questioning of the VE. With these limitations, the VE opined that Plaintiff could still do his past work as a construction worker II as he performed it. My review of the Plaintiff's testimony about that work, as well as his administrative submissions about the same, suggest that the ALJ's appropriately relied on the VE's testimony when concluding that Plaintiff could still do the job and was not disabled.[6] In sum, while the Plaintiff suffers from a number of impairments and issues, they were fairly considered by the ALJ. When the record is considered as a whole, the RFC and disability conclusions of the ALJ are supported by substantial evidence. On this appeal, Plaintiff does not demonstrate otherwise.

---

[6]To the extent that the ALJ also concluded that Plaintiff could perform his past work as a truck driver, I find the conclusion unsupported by the substantial evidence. I do not read the testimony of the VE to support that Plaintiff had the visual acuity for the work or the ability to sit for long enough periods to satisfactorily perform such work. Thus, the assessed limitation for only two hours sitting would eliminate such work, and it appears to me that the limitation for excellent *bilateral* visual acuity cannot be met either.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 10th day of August 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record